Chief Justice Marshall
delivered the opinion of tile Court.
Jacob Cartmell, by his last will,, made on the 15th April, 1833, devised different portions of his estate to each of his four children, giving to his daughter Catherine Higdon 20H acres of land and four slaves, then in possession of William, PIigdon,.her husband: By the last clause of the will, the estate intended for Mrs. Higdon, is vested in trustees for the benefit of .said William and Catherine during their joint lives, or continuance in wedlock, free and exempt from any debts or liabilities of the husband, &c., giving them both the right to use and enjoy the property, or receive the rents, dfc.; and provides as follows: “If the said Catherine dies, without issqe, b.efore the said William, [all] of the the estate, hereby devised, is to be equally divided among my heirs; but if she survives the said Higdon, the trustees are to release the estate to her; and in that event, the estate devised to her, is to be vested in her tp ¿o with and dispose of the sa,me as she may thinly proper.”
By a codicil made on the 26th May, 1333, the testator reciting that by his will he had devised sundry estate to his daughter Catherine Higdon, that is, for her benefit and that of her husband during their joint lives, devises the same estate to trustees for the exclusive use and. *189 benefit of his daughter Catherine Higdon, during her natural life; and if she die without lawful issue of her body, then the said estate is to pass and vest, by this will, in my (the testator’s) lawful heirs. It is then expressly provided that the trustees shall manage the estate for her exclusive benefit; that the said William Higdon is not to have, use, or occupy any portion of it, nor to live on. the land but at their discretion; and they are not to permit him to sell, vent, or hire the same for any purpose or term. He is, in no event, to have control or management ofthé same, but the same is to remain in the .trustees, free from his debts, or liabilities, or use; and after the death of my daughter, if she die with [without] lawful issue, the same is to be sold and equally divided between my three-children, N. H. Cartmell, Sarah Lane, and Eliza Nelson, and the heirs of such as may be dead.
Decree of the in«. ferior Court.
Catherine Higdon survived her husband, and after his death had an illegitimate son, Moses Black, her only issue, who, in this suit, for partition, &c., between the three devisees, in remainder, claims the estate devised to his mother, all of which had been, in his possession after the death of the testator. ' The Circuit -Court being of opinion that he did not answer the description of ‘lawful issue,’ denied his claim, and decreed a partition ■among the devisees in remainder, The correctness of this opinion and decree is the only question now to be .considered. And this question depends upon the proper construction and legal effect of the will.
The words ‘with issue,’ in the last clause of the codicil, were obviously written by mistake, instead of the words ‘without issue;’ and the codicil must be undei’stood as providing for the case of Mrs. Higdon’s dying without lawful issue, and not for the case of her leaving issue. But the devise over, in case of her dying without lawful issue, implies, certainly and necessarily, that such issue was to take at her death; and th.e ■only question is, whether by force of the word lawful, as applied to issue, the illegitimate son is to be exclu,-.. ded,
*190 Upon comparing the provision for Mrs. Higdon in the body of the will with that made by the codicil, it is, we think, entirely obvious that the main object of the codicil was to correct the previous provision, so far as it gave to William Higdon, the husband, an interest in the estate devised for the benefit of his wife. It was, probably, ascertained that the estate, though declared to be exempt from his debts, might, in truth, have been made subject to them; and hence the necessity of the codicil, which, in the most express and formal manner, excludes him from all use and control, and confines the use, exclusively, to the benefit of the wife. It was to make a more formal and effectual provision on this subject, that the codicil was written and executed, and not with any view of defining the sort of issue which should take the estate on the death of Catherine Higdon, or of excluding any issue which she might have. And although the word lawful, which had been omitted in the original devise, is introduced into the codicil as qualifying the word heirs (of the testator,) and the word issue (of the devisee Catherine); yet, as it is certain, that it has not the slightest effect upon the import of the word heirs, but leaves it to import, as it would have done standing alone, the persons entitled by law to inherit the father’s estate; so if instead of the word issue, used in reference to the daughter, the words “heirs of her body” had been used, we might have felt fully authorized to conclude that the word lawful, prefixed to “heirs of the body,” was entitled to no effect whatever, but left these latter words to operate according to their legal and technical import, as indicating such of her issue as were entitled by law to inherit her estate. And as her illegitimate son, being under our law her heir, would, in this sense, be the lawful heir of her body, we should scarcely hesitate to decide that the [contingency of the mother dying without lawful heir of her body had not happened, and that the son coming under that description, was, notwithstanding the illegitimacy of his birth, entitled to all the benefit which would have accrued to a legitimate son, either as. *191 devisee under the -will, or as heir to his mother, if she had taken an estate of inheritance.
Such a construction would, of course, not be given, if it appeared, or should be inferred, that the word lawful was used not as a merely formal or common prefix to the word heirs, but with a special view to indicate legitimacy of birth, as a requisite qualification of the heir or devisee referred to. But there is not the slightest ground, either in of out of the will,so far as appears by this record, for supposing that the father anticipated that his daughter, then a married woman, might have an illegitimate child, or that he intended to provide against it. Nor can it be assumed, or even presumed, that if she had had an illegitimate son when the will was made, her father would, on account of her fault, have excluded his unoffending grandchild from all participation in his estate, and left him a vagabond dependent upon the charity of others for sustenance and education, The introduction of the word ‘lawful’ into the the codicil, was, as we infer, the mere act of the draftsman who intended to make the codicil more formal than the original provision, for which it was to be a substitute, and therefore implies no special view to legitimacy of birth. And as the main object of the codicil was to correct the original provision, with respect to the interest thereby given to the husband of Catherine Higdon, which might defeat the benefit intended for her, it may be inferred, that the attention both of the testator and of the draftsman who probably suggested the necessity of this correction, was chiefly directed to such a remodeling of the provision as would secure the estate to the use of the wife, free from the* debts of the husband; and that the omission to provide, as in the original clause, for a conveyance of the estate to the testator’s daughter, in case she should survive her husband, resulted from mere inadvertance, and from overlooking the effect which, in that event, the codicil might have upon her interest. For not only was the codicil made but a few weeks after the original will, and when, so far as appears,-nothing had occurred *192 to Change the benevolent feelings of the father towards this daughter; but, as upon comparing the two clauses; we perceive that by the first,it was onlyuponthe contingency of CatherineHigdon dying withoutissue,before her' husband,that the estate is devised over to the testator’s other heirs, it may be supposed that, in hastily writing the Codicil for the purpose of annulling the h&sband’s interest and securing that of the wife, the same contingency was alone in view, and was intended, though not fully described. And as if it had been fully described, and no other had been provided for, the codicil might rationally have' been considered as applying to that contingency alone; andas thus leaving the original clause to operate in the other contingency, therein referred to, the draftsman and the testator considering the codicil as applying alone to the contingency on which the estate was devised over by the original clause, may also have considered the original clause as still operating in the other contingency.
Under these views-, entertained after the first argument of this cáse, except that we had not minutely compared the original clause with the codicil; further than to draw the conclusion that the object of the codicil was mainly to correct the original provision, so far as it gave an interest to William Higdon, the husband, we decided the case on the assumption that thé words “ lawful issue, ” should be understood merely as designating such issue as might, by law, inherit from the mother. And, being under this view of opinion, that whether the will should be construed, as intending the issue of Catherine Higdon to take* by descent, from her, (which could only be by supposing the inheritance to be in- her,) or to take, as persona designates, that is; as purchasers or devisees under the-will, her illegitimate son would, in either case; be capable of taking, as heir by descent or as heir designated; and that, therefore, the contingency on which the devise over was to take effect had not occurred, the decree excluding him from the division was on this ground reversed.
The term ‘lawatl respects tanfufheirs^tho
But as the position that illegitimate issue might fill ithe description of lawful issue was, apparently, inconsistent in itself, and certainly inconsistent with the ten- or of the British authorities, a re-argument was granted, and we have since considered more maturely, not only the position above stated, but also the will and codicil out of which the question grows.
With regard to the position on which the former de-cision was based, xve cannot admit that the British authorities, founded upon laws which declare a bastard to be jilius nullius and xvholly incapable of inheriting even from his mother, and therefore not coming within the description of “heir of her body,” are fully applicable to him under our laxvs, which giving full effect to' the fact that he is certainly the son of his mother, makes him her heir, and thus brings him within the description of “heir, or lawful heir of her body.” For both of these terms have precisely the same meaning; both meaning such issue as may inherit from her, which under the English law excludes, but under ours includes bastards. But upon further consideration, we are inclined to think the position referred to was erroneous in regarding the terms “lawful issue” as in all respects equivalent to the the terms “lawful heirs of her body.” The word heir or heirs, is wholly technical, meaning the person or persons who may by law inherit. The words “ heirs of the body,” are equally technical, meaning such of the issue or offspring as may by laxv inherit. And it is only by a liberal and indulgent construction, indicated by the context or by circumstances, that either of these expressions is held to mean children or grandchildren. The word issue is not wholly technical, but has a natural signification and common use, including all the offspring or descendants of the person, whether heirs or not. It is therefore not identical with “heirs of the body.” But although it always includes them, it is not confined to them. In its natural and common use, it means descendants or offspring — and as the phrase “ lawful descendants or offspring,” would clearly exclude illegiti *194 mate, or unlawful descendants, or offspring, although they might inherit; so, although the word issue is often used and understood as equivalent to “heirs of the body,” still, as it has also a natural signification and common use, precisely equivalent to descendants or offspring, the fact that an illegitimate'child may inherit from its mother, seems hardly to be a sufficient ground for saying that he is embraced in the words “.lawful issue,” as he certainly would not be in the words “lawful descendants.”
Illegitimate children may inherit from the mother, but are not such ‘lawful is ue’ of the mother as will take a remainder in an estate given to her for life, then tojher ‘lawful issue.’
h devise to trustees for the use of A, a feme covert, for life, * then to her lawful issue, gives to a no such lefif case*3of Ter iuifgufmlte child,
*194 Moses Black, therefore, cannot take any part of this-estate, except as heir to his mother; and he cannot take as her heir, unless she had, under the will, an estate of inheritance. Whether as the estate, if given to her for life, is devised over upon the contingency of her dying without issue, it might not, upon the evident implication that her issue, if she should have any, should take it it on her death, be enlarged by construction or implication into an estate tail, converted' by our statute into an absolute fee simple, might be a serious question if it were not that her interest, as expressed in the coded, is equitable only, while the interest of the issue would be legal; and as the two estates being of different quality or nature, would not coalesce, therefore,, the rule in Shelly’s case would not apply. Nor are we prepared to decide, even if ihis were not so, that the estate, given expressly in trust for the mother for life, should be enlarged by implication even into an equitable fee, since the effect would be to give to herself and husband an absolute power of disposition inconsistent with the general object of such a limitation. But we are of opinion, that the contingency is limited by the terms and nature of the provision to the time of Catharine Higdon’s death, and that in this view the devise over is valid..
Then, although there might possibly be such a construction of the codicil, in accordance with the conjectural view, already stated, as would limit its operation to the contingency of the devisee, .Catharine Higdon, dying without issue, in the lifetime of her husband, and *195 thus leave the previous clause to operate in the contingency which has actually happened of her surviving him, in which case she would have had, either a legal estate, in fee simple, under the first devise to her, or a right to a conveyance, in fee, under the oi’iginal trust clause — we think the inferences which would favor such a construction are not sufficiently conclusive to authorize us to disregard the express letter of the codicil, extending the trust to her natural life, and providing that,on her death without issue, the estate should vest in the testator’s heirs, or be sold, and the proceeds be divided between them. Without supposing any diminution of affection for his daughter, or any anticipation derogatory to her, the testator might think it sufficient to secure an equal portion of his estate to her during her life; and if she should have no issue, to give it, on her death, to his other heirs, who might be deprived of it, if the absolute fee and power of alienation was vested in her, even after the death of her husband. We suppose then that the codicil, absolutely, supplants the trust clause in the original will; and that as the legal estate, during her life, wasvestedin the trustees,and was to pass to others on her death withoutlawful issue, she having in fact died withoutlawful issue, never had anyinterest, but a use for life, and perhaps a remainder, contingent on the event of her leaving lawful issue at her death, which did not happen. There was, therefore, no estate in her which could descend to Moses Black, and he is entitled to no portion of his grandfather’s estate.
The decree recognizes his right to the interest which his mother was entitled to in the estate of her mother, who died before her; but did not decree it, as we presume, because it was not expressly prayed for, and because the administrator, in whose hands it was, and who, though one of the three heirs of the testator, asserts the right of Moses Black to the property devised to his mother, is, as may be inferred, his statutory guardian. We are, therefore, not disposed to disturb the decree in this respect.
^ jfyr¿cj¡,fájre an¿ QrigShy for plaintiff; J. 41 EL L. Harlan, Robertson and B. Hardin for defendants.
Wherefore, no error being perceived to the prejudice of either party, the decree is affirmed.