THOMAS STEWART, executor &c.,

*v.*

JANE STEWART and others.

1. In order to avoid a will for uncertainty, it must be incapable of any clear meaning.

2. A wife will be put to her election between a testamentary disposition in her favor and her dower, when it clearly appears from the will that the testamentary provision was intended as a substitute for

Stewart *v.* Stewart.

the legal one, and the intention will be implied if the claim of dower would be clearly inconsistent with the will.

3. Gifts to "my beloved sons," naming three persons, are good, although two of them are illegitimate.

---

Bill for construction of will.　On final hearing on bill and answer.

*Mr. A. B. Woodruff*, for complainant.

*Mr. S. Tuttle*, for the answering defendants.

THE CHANCELLOR.

David Stewart, of the city of New York, by his will, dated April 19th, 1877, provided as follows:

"First—After all my just debts and funeral expenses are paid and discharged, I do hereby order and direct that, as soon after my

---

NOTE.—An unmarried man may, without violating any rule of law, provide by will for the maintenance of his illegitimate children (*Dunlap* v. *Robinson*, 28 *Ala.* 100; *Harten* v. *Gibson*, 4 *Desauss.* 139; *Bunn* v. *Winthrop*, 1 *Johns. Ch.* 329; *Williams* v. *MacDougall*, 39 *Cal.* 80); and, if legitimated by statute, a bastard may take under a bequest to "children" (*Shelton* v. *Wright*, 25 *Ga.* 636; *McGunnigle* v. *McKee*, 77 *Pa. St.* 81, but see *Thompson* v. *McDonald*, 2 *Dev. & Bat. Eq.* 463), or, one to "nephews" (*Brower* v. *Bowers*, 1 *Abb. Dec.* 214).

In *Standen* v. *Standen*, 2 *Ves.* 589, a devise to C. M. and C. E., *legitimate* son and daughter of C. S., was held good, although both C. M. and C. E. were illegitimate.

In *Rivers's Case*, 1 *Atk.* 410, a testator gave an equal share of his real estate to each of his two sons, J. and C. Both J. and C. were illegitimate.—*Held*, that they both took.

In *Wilkinson* v. *Adam*, 1 *Ves. & Bea.* 422, 12 *Price* 470, a residuary devise by a married man who had no legitimate children, "to the children which I may have by A., and living at my decease," was held, after their reputation as children of the testator had been shown by evidence, to vest the lands devised in them, as a class. [This case has been questioned. *Warner* v. *Warner*, 15 *Jur.* 141.]

In *Cartwright* v. *Vawdry*, 5 *Ves.* 530, a trust until testator's child or children should attain twenty-one or marriage, and then to pay such of them as became of age or married *one-fourth* of the whole income, there being one illegitimate child born before testator's marriage and three legitimates born afterwards,—*Held*, not to entitle such natural child to one-fourth.

Stewart *v.* Stewart.

decease, my executor hereinafter named shall take charge and control of all my personal and real estate, wherever the same may be, and shall sell and dispose of the same as he may think to the best interest and advantage of all the parties hereby interested in the same.

"Second—I do hereby give, devise and bequeath unto my beloved wife, Jane Stewart, one-third of all my real estate, the same being in the town of Paterson, in the state of New Jersey.

"Third—After deducting the said one-third devised and bequeathed to my beloved wife, I do order and direct that the rest, residue and remainder of the moneys derived from the sale of my said real estate be equally divided between the following persons: 1st, I do hereby give, devise and bequeath unto my friend Margaret Stewart a one equal undivided one-fifth part of the profits obtained on the sale of my said real estate, together with all my personal property. Fourth—I do hereby give, devise and bequeath unto my beloved son David Stewart, a minor, under the age of twenty-one years, to wit, now of the age of fifteen years, one equal undivided one-fifth part of the profits and moneys obtained on the sale of my said real estate. Fifth—I do hereby give, devise and bequeath unto my beloved son Alexander Stewart, a minor, under the age of twenty-one years, to wit, now of the age of four years, one equal undivided one-fifth part of the profits and moneys obtained on the sale of my said real estate.

---

In *Bentley* v. *Blizard*, *4 Jur.* (*N. S.*) *652*, M. B. gave the whole of her estate to E. B., then living with her as her husband, for life, and afterwards to be equally divided between the natural children of the said E. B. who might then be living. There were then living with M. B. and E. B. two natural children which she had had by him.—*Held*, that, in case they survived E. B., they were entitled.

In *Connor's Case, 2 Jones & Lat. 456*, a bequest was made to pay to A. N., during her life or until her marriage, for the support of her children, W. and R., and in case of her death or marriage to apply it to the use of her children. The testator was then cohabiting with A. N. and had had by her two illegitimate children, W. and R., named in his will, and no others. Subsequently he had had four others.—*Held*, that W. and R. took to the exclusion of the others. Also, *Medworth* v. *Pope, 27 Beav. 71.*

In *Mortimer* v. *West, 3 Russ. 370*, a gift to A. and B., who were illegitimate children, and every other child or children of M. D., the mother of A. and B., "alive at my decease or born within nine months afterwards," share and share alike,—*Held*, not to include any born after the date of the will.

In *Dorin* v. *Dorin, L. R.* (*7 H. of L.*) *568*, a man who had two illegitimate children by M. C., married her, and, the next day, by will, gave her "liberty to direct the disposal of the property among our children, by will, * * * and, should she make no will, I desire that the property shall be divided * * * equally between my children by her." He had no children born afterwards, but always treated the

Stewart *v.* Stewart.

Sixth—I do hereby give, devise and bequeath unto my beloved son Joseph Stewart, a minor, under the age of twenty-one years, to wit, now of the age of two years, one equal undivided one-fifth part of the profits and moneys obtained on the sale of my said real estate. Said bequeaths being independent of the bequeath made to my said wife. Seventh—I do hereby order and direct that the money derived of and from the sale of my said real estate shall be paid over to such devisees as may be of age as soon after my death as may to my said executor seem proper, and that all moneys by him in hand, the results of the sale of my said real estate, shall be invested in United States securities to and for the interest and advantage of my said children herein named who may at the time of the sale of said property be minors. Eighth—I do hereby nominate, constitute and appoint my beloved brother Thomas Stewart, of the town of Paterson, state of New Jersey, to be the guardian of such of my said children as may be minors at the time of my decease, and also nominate, constitute and appoint the said Thomas Stewart to be the executor of this my last will and testament, hereby revoking all former wills by me made."

The bill states that the testator died August 24th, 1878, leaving his widow, Jane Stewart, and the following legitimate children, all by her: Mary A., James F. and David;

two already mentioned as his own children.—*Held*, that, aside from the widow's interest, the estate was undisposed of. .

In *Worts* v. *Cubbitt, 19 Beav. 421*, a natural daughter, who, in a prior part of the will, had been mentioned by her christian name and so described as one of the daughters, was held to be included in a subsequent general gift "to all my daughters." Also, *Evans* v. *Davies, 7 Hare 498; Owen* v. *Bryant, 2 DeG. M. & G. 697, 13 E. L. & E. 217;* but see *Bagley* v. *Mollard, 1 Russ. & Myl. 581.*

In *Barnett* v. *Tugwell, 31 Beav. 232*, a residuary gift "to the children, legitimate or illegitimate, of my brother H. equally," was held good, and to be divided among three illegitimate and nine legitimate children of H., who survived testator.

In *Herbert's Trusts, 1 Johns. & H. 121*, a bequest was made in favor of the daughters of A., A. having died seven years before the date of the will, leaving no legitimate children, but two reputed daughters, who were known and recognized as such by the testator, and one of whom survived him.—*Held*, that such survivor was entitled.

In *Woodhouslee* v. *Dalrymple, 2 Mer. 419*, a gift "to the children of C. K., living at my decease," such children being illegitimate but recognized by C. K. as his children, and C. K. dead at the time of testator's death, carried the property to them.

In *Fraser* v. *Pigott, 1 You. 354*, a bequest was made among testator's grandchildren, being children of his late sons, W. and J., whether born in wedlock or not. J. left both legitimate and illegitimate children, W. left only illegitimates.—*Held*, that only the legitimate children of

and that he left, also, the following children, reputed to be his illegitimate children by one Margaret Stewart, viz.: Alexander Stewart, aged six years, and Joseph Stewart, aged three years or thereabouts.

The bill presents the following questions: First— Whether the testator intended that his executor should sell all of his real and personal estate, or whether, as to his real estate, he intended that one-third of it should just be set off to his widow as her dower, or his devise to her, and only the remainder thereof be sold.  Second—Whether Margaret Stewart takes, under the will, one-fifth of the proceeds of the sale of the whole, or of two-thirds only of the real estate, or one-fifth of the profits made by the sale thereof over its cost, or one-fourth thereof, and what share she does take.  Third—Whether David, Alexander and Joseph Stewart, respectively, take, under the will, one-fourth or only one-fifth of the profits or moneys to be obtained by a sale of the real estate, and to what share they are respect-

---

J. could take, to the exclusion of J.'s illegitimates, and that the illegitimates of W. could also take.  But see *James* v. *Smith, 14 Sim. 216; Overhill's Trusts, 1 Sm. & Giff. 362.*

In *Meredith* v. *Farr, 2 Y. & C. Ch. 525,* there was a bequest of one-half of a sum to the children of A. and the other half to the children of B., the latter being specifically named.  Both A. and B. had legitimate and also illegitimate children.—*Held,* that only the legitimate children of A. were entitled, but that all the children of B. were entitled because they were named in the will; and a bequest to the children of A., including her daughter E. (who was illegitimate), is good, A. having no legitimate child named E.

In *Allen* v. *Webster, 2 Giff. 177,* under a designation as " my grandson," a legitimate son of testator's illegitimate son was held entitled.

In *Gabb* v. *Prendergast, 1 Kay & Johns. 439,* a settlement was made to all the children, as well those already born as hereafter to be born, of A. and B. his wife.  A. and B., at the date of the settlement, had been married five years.  They never had any legitimate children, but, before her marriage, B. had several children still living who were reputed to be her children by A.—*Held,* that such children were entitled.

In *Doe* v. *Beynon, 12 Ad. & El. 431,* a testator devised to M. B.'s three daughters, M., E. and A.  When the will was made, M. B. had three legitimate daughters named M., E. and A., but E. died in testator's life-time (the fact of such death being concealed from him), and afterwards M. B. had an illegitimate daughter E.—*Held,* that E. was not entitled.

ively entitled. Fourth—Whether the testator intended to dispose of all his real and personal estate, or whether he intended, after the devise to his wife, to devise only four undivided fifth parts thereof, and to die intestate as to the rest.

The defendants, Jane Stewart, Mary A. Baron (late Stewart) and her husband, Sarah J. Brooks (late Stewart) and her husband, James F. Stewart and his wife, and David Stewart, have answered. They admit all the material allegations of the bill, and submit the following additional questions: First—Whether the will is not so vague and uncertain that its judicial construction is impossible, and whether the will is not therefore void. Second—Whether the provisions of the will are not so confused and contradictory that the intention of the testator is not ascertainable, and whether the will is not therefore void. Third— Whether the testator intended that the executor should sell the real estate free from his widow's dower, and whether

---

In *Wells's Estate, L. R.* (*6 Eq.*) *599*, a direction to pay certain shares to "all my children living at my decease, except my son T.," he being illegitimate, and also another child A., was held not to include A. Also, *Ayles's Trusts, L. R.* (*1 Ch. Div.*) *282*

In *Holt* v. *Sindrey, L. R.* (*7 Eq.*) *170*, under a trust for testator's daughter, the wife of J. L., for life, and then unto all and every the child or children of such daughter, begotten or to be begotten. The daughter was never legally married to J. L., but had several children by him, and had no legitimate children.—*Held*, a sufficient designation to entitle them to take.

In *Savage* v. *Robertson, L. R.* (*7 Eq.*) *176*, a gift to testator's unmarried sister, by name, and to her two youngest daughters, entitles them to share with their mother.

In *Kerr's Trusts, L. R.* (*4 Ch. Div.*) *600*, a fund was given upon trust for such of the children of M. as she should appoint. M. appointed to her children E. and C., their executors &c., for their own use and benefit. E. was an illegitimate and C. a legitimate child.—*Held*, that the appointment to E. was void.

In *Lepine* v. *Bean, L. R.* (*10 Eq.*) *160*, under a residuary bequest to the children of M., an illegitimate child of the testator and M. may take, *he having no other children living*, although he had another wife besides M. Also, *Dilley* v. *Matthews, 11 Jur.* (*N. S.*) *425*.

In *Clifton* v. *Goodbun, L. R.* (*6 Eq.*) *278*, a testatrix, who was never married, describing herself as a spinster, bequeathed her property in trust for her children, and, in a codicil, she described them by name.— *Held*, that all of her illegitimate children living at her death, and

Stewart v. Stewart.

the widow is not entitled to her dower besides the third of the proceeds of the real estate.

The intention of the testator, though somewhat obscurely expressed, can be discerned in the provisions of this will. It must be an extreme case in which the court will hold a will void for uncertainty. *Den* v. *McMurtrie*, *3 Gr. 276.*

"In the construction of wills," says Mr. Jarman, "the most unbounded indulgence has been shown to the ignorance, unskilfulness and negligence of testators. No degree of technical informality, or of grammatical or orthographical error, nor the most perplexing confusion in the collocation of words or sentences, will deter the judicial expositor from diligently entering upon the task of eliciting from the contents of the instrument the intention of its author, the faintest traces of which will be sought out from every part of the will, and the whole carefully weighed together." *1 Jarm. on Wills 315.* Said Sir John Leach, V. C., in *Mason* v.

---

including one born after the will was made, were entitled to her property.

In *Lakes* v. *Hordem*, L. R. (*1 Ch. Div.*) *644*, residuary personal estate bequeathed to "all and every my daughters, in equal shares, who shall attain the age of twenty-one years, or marry,"—*Held*, that as testator had no legitimate children, his three daughters were intended.

In *Hill* v. *Crook*, L. R. (*3 Ch. Div.*) *773*, (*6 H. of L.*) *265*, a trust to stand possessed (after the death of M., the wife of J. C., without appointment) for the child or children of M. C., was held good, although the marriage of J. C. and M. was not lawful, their children, however, being alive and recognized as such by testator.

In *Paul* v. *Children*, L. R. (*12 Eq.*) *16*, a trust in favor of testator's niece C. and her husband, and for her child, if only one, or all her children if more than one. C. being then fifty years old, and having only one child, born before her marriage, such child was held not entitled. See *Overhill's Trusts, 1 Sm. & G. 362.*

In *Durrant* v. *Friend*, 11 E. L. & E. 2, A., in 1847, gave to his adopted daughter E. the residue of his estate, "the interest to be paid to her until her first-born son should attain the age of twenty-one." E. had an illegitimate son, born in 1844, who was maintained at the expense of testator.—*Held*, that such son was not entitled. Also, *Godfrey* v. *Davis*, 6 Ves. 43; *Ward* v. *Espy*, 6 Humph. 447; *Miles* v. *Boyden*, 3 Pick. 213.

In *Gill* v. *Shelley*, 2 Russ. & Myl. 336, a share was given to the children of M., deceased. M. left two children, one legitimate the other not. Evidence was admitted to prove that the illegitimate had acquired the reputation of being the child of M.; that the testatrix well knew it, and that M. left only those two children.

Stewart *v.* Stewart.

*Robinson, 2 Sim. & Stu. 295,* "In order to avoid a will for uncertainty, it must be incapable of any clear meaning."

The testator meant to give his executor power to sell all his property, real and personal, as the latter might deem most advantageous to the beneficiaries under the will. He did not intend to except from sale any part of his real estate. By the gift of one-third of his real estate to his wife, he intended a gift of one-third of the proceeds of the sale of all his real estate, for the gift is not only immediately preceded by a direction to sell all his real estate, but is immediately succeeded by a gift of the residue of the proceeds, after deducting therefrom the third given to his wife, referring to the devise of the third of the real estate. Of the proceeds of the sale of his real and personal property, he meant to give all that would be derived from the personal property, after payment of his debts and funeral and testamentary expenses, to Margaret Stewart. Of the pro-

---

In *Leigh* v. *Byron, 1 Sm. & Giff. 486,* a gift equally among all the children of L., was held to embrace two illegitimate as well as the one legitimate child of L. Also, *Edmunds* v. *Fessey, 29 Beav. 233; Hartley* v. *Tribber, 16 Beav. 510; Swaine* v. *Kennerly, 1 Ves. & Bea. 469; Hart* v. *Durand, 3 Anst. 684.*

In *Ehringhaus* v. *Cartwright, 8 Ired. 39,* a devise "to my said son T. and my daughter P., who was also born before I married her mother," was held not to prevent the heirs of P. from proving that P. was legitimate, although T. was not. See *Johnson* v. *Johnson, 1 Desauss. 595; Pearson* v. *Pearson, 46 Cal. 609; Kenyon* v. *Ashbridge, 35 Pa. St. 157; Viall* v. *Smith, 6 R. I. 417.*

In *Bayley* v. *Snelham, 1 Sim. & Stu. 78,* J. S., who had married a sister of his deceased wife, and had one son of that marriage, gave the residue of his property to all of his children by his reputed wife.—*Held,* that the son, being born at the date of the will, was entitled.

In *Beachcroft* v. *Beachcroft, 1 Madd. 234,* under a bequest by an unmarried man "to my children," parol evidence was admitted to show whom the testator considered as his children, and they were admitted to take as a class, although illegitimate and not named specifically in the will.

In *Shearman* v. *Angel, Bail. Eq. 351,* a testator devised part of his estate to his "mother," for life, and, at her death, to her children, and devised another part to his "sister." The testator and his "sister" were illegitimate children of the "mother," who, at her death, left legitimate children surviving.—*Held,* that the latter took the first devise exclusively.

In *Gardner* v. *Heyer, 2 Paige 11,* a testator lived and cohabited with M. S., in his house, and had by her four natural children, a son called

Stewart *v.* Stewart.

ceeds of the sale of his real estate, he intended that one-third should go to his wife, and that the rest should be equally divided between Margaret Stewart, his legitimate son David, and his illegitimate sons Alexander and Joseph. That he did not intend to die intestate as to any part of his estate, is manifest. All his personal estate is given to Margaret Stewart, and he directs that all his real estate be sold, and, after giving to his wife one-third of the proceeds, disposes of all the rest. Though in the gift of a share of the proceeds of the sale of the real estate to Margaret Stewart, he speaks only of "profits," giving to her an equal undivided fifth of the "profits obtained from the sale," while in the gifts to David, Alexander and Joseph, he gives to each of them a fifth of the "profits and moneys obtained from the sale," it is evident that he intended to give her the like share of the same fund with each of them. He appears to have used the word "profits" by mis-

John and three daughters who were baptized by his name and educated and acknowledged by him as his children. By his will, he gave to his son John $10,000, and to each of his daughters $3,000.—*Held*, a sufficient description and designation of them to entitle them to take as legatees.

In *Williams* v. *MacDougall, 39 Cal. 80,* a testator devised all of his estate to his two legitimate daughters M. and F., subject to the education &c. of A., B. and C., "my hereinbefore-named minor children." A., B. and C. were illegitimate.—*Held*, that A., B. and C. were entitled to education &c. according to testator's situation in life.

In *Jackson* v. *Hartshorne, 1 Code (N. Y.) Rep. 91, note,* a testator, having had several illegitimate children whom he recognized as his own, married their mother, and, she being pregnant, he devised his property to "the maintenance of my wife and such children that I may have had by her."—*Held*, that the children born before the marriage could not take.

In *Ferguson* v. *Mason, 2 Sneed 618,* a testator bequeathed a slave to his daughter E., for life, with remainder to his granddaughter H. He had an illegitimate granddaughter H., the daughter of E., and also a legitimate one, named H., daughter of his son.—*Held*, that the latter was entitled to the remainder.

In *Powers* v. *McEachron, 7 Rich. (N. S.) 290,* a testator desired that all of his estate should be kept together until his youngest living child should attain the age of twenty-one years, and then to be divided "among my wife and all my then living children equally." Testator married S. T., in 1813, and they separated in 1819, having had several children. In 1834, S. T. and her children removed from the state. In 1843 and subsequently, testator had natural children by S. C., whom

take, instead of "proceeds," or an equivalent term. That he meant to give her an equal share in the whole of the remainder of the proceeds of the sale of the real estate, after deducting one-third for his wife, is clear, for he provides that, after deducting the third given to his wife, the rest, residue and remainder of the moneys derived from the sale of his real estate, shall be equally divided among Margaret and his three sons above mentioned, referring to them as "the following persons," and proceeding to name them; and there is no indication of any contrary or different intention by any disposition of any part of the proceeds of the sale of the real estate in any other way. Again, there could be no equal division of all the rest, residue and remainder of the proceeds of the sale of his real estate among Margaret, David, Alexander and Joseph, if she was to receive a share of the profits only.

The testator intended to give to Margaret, David, Alex-

---

he acknowledged as his wife. His wife, S. T., died in 1857, and before that time his will was executed.—*Held*, that S. C. and her children were entitled.

Under a devise to B., for life, with remainder to her *issue*, an illegitimate daughter of B. cannot take (*Doggett* v. *Moseley*, 7 *Jones* (*N. C.*) *587; Gibson* v. *Moulton*, 2 *Disn. 153*); so, under a devise to the *lawful issue* of a life tenant (*Black* v. *Cartmell*, 10 B. Mon. 188; see *Miller's Appeal*, 52 Pa. St. 113); so, under a bequest to the *next of kin* of J. (*Standley's Estate*, L. R. (5 Eq.) 303); so, to two illegitimate children and over if either die without *heirs* (*Pratt* v. *Flamer*, 5 *Han. & Johns. 10*).

Under a bequest to testator's widow "to be at her disposal in any way she may think best for the benefit of herself and *family*," a bequest to an illegitimate son of one of testator's sons is valid. *Lambe* v. *Eames, L. R. (6 Ch. App.) 597.*

The above cases do not touch the question as to the undoubted right of a state to authorize bastards to inherit. (*Stevenson* v. *Sullivant*, 5 Wheat. 207; *Miller* v. *Williams*, 66 Ill. 91; *Alexander* v. *Alexander*, 31 Ala. 241; *Drain* v. *Violett*, 2 Bush 155; *Allen* v. *Ramsey*, 1 Metc. (*Ky.*) 635; *Flintham* v. *Holder*, 1 Dev. Eq. 349; *Drake* v. *Drake*, 4 Dev. 110; *Waggoner* v. *Miller*, 4 Ired. 480; *Little* v. *Lake*, 8 Ohio 289; *Wright* v. *Lore*, 12 Ohio St. 619; *McCormick* v. *Cantrell*, 7 Yerg. 615; *Swanson* v. *Swanson*. 2 Swan 446; *Ash* v. *Way*, 2 Gratt. 203.) But such statutes cannot be retroactive. (*Hughes* v. *Decker*, 38 Me. 153; *McCool* v. *Smith*, 1 Black 459; *Edwards* v. *Gaulding*, 38 Miss. 118. See *Rice* v. *Efford*, 3 Hen. & Mun. 225, 228, note; *Brower* v. *Bowers*, 1 Abb. App. Dec. 214.) Nor legitimate bastards, so as to render them capable of inheriting lands in another state. (*Smith* v. *Derr*, 34 Pa. St. 126; *Lingen* v. *Lingen*, 45 Ala. 410;

ander and Joseph, all the remaining two-thirds of the proceeds of the sale of all his real estate after deducting the third given to his widow, for he expressly says so. He, indeed, in particularizing the gifts, gives to each of them only a fifth instead of a fourth part, but that is evidently a mere arithmetical mistake.

The widow is not entitled to dower in addition to the gift of one-third of the proceeds of the sale of the real estate. A wife will be put to her election between a testamentary disposition in her favor and her dower, when it clearly appears from the will that the testamentary provision was intended as a substitute for the legal one; and the intention will be implied if the claim of dower would be clearly inconsistent with the will. *Stark* v. *Hunton, Sax. 216; Colgate's ex'rs* v. *Colgate, 8 C. E. Gr. 372.* In this case the testator disposes of all his estate. He not only provides for his widow, but gives her more than she would have been entitled to as her dower. He gives her absolutely one-third of the proceeds of the sale of all his real estate. He then

---

*Doe* v. *Vardill, 5 Barn. & Cress. 438.*) And are strictly construed. (*Pina* v. *Peck, 31 Cal. 359; Edwards* v. *Gaulding, 38 Miss. 118; Miller* v. *Stewart, 8 Gill 129; Barwick* v. *Miller, 4 Desauss. 434.* See *Remy* v. *Municipality, 11 La. Ann. 148.*)

That representation among collaterals shall extend to the children and grandchildren of brothers and sisters, includes illegitimates. *Houston* v. *Davidson, 45 Ga. 574.*

Whether, under the statute of distributions, an illegitimate child may take as a "brother" or "child." *Brown* v. *Dye, 2 Root 280; Porter* v. *Porter, 7 How. (Miss.) 106; Standley's Estate, L. R. (5 Eq.) 303; Hughes* v. *Decker, 38 Me. 153; Barwick* v. *Miller, 4 Desauss. 434.*

And also under the statute of descents. *Heath* v. *White, 5 Conn. 228; Dickinson's Appeal, 42 Conn. 491; White* v. *Ross, 40 Ga. 339; Blacklaws* v. *Milne, 82 Ill. 505; Berry* v. *Owens, 5 Bush 452; Burlington* v. *Fosby, 6 Vt. 83; Cooley* v. *Dewey, 4 Pick. 93; Haraden* v. *Larabee, 113 Mass. 430; Pratt* v. *Atwood, 108 Mass. 40; Jones* v. *Burden, 4 Desauss. 439; Rogers* v. *Weller, 5 Biss. 166.*

An illegitimate child is not entitled to a share of his father's estate, if omitted from the will. *Kent* v. *Barker, 2 Gray 535.* See *Beck* v. *Metz, 25 Mo. 70.*

A testator cannot appoint a testamentary guardian for his illegitimate son. *Sleeman* v. *Wilson, L. R. (13 Eq.) 36.*

A penalty for abducting a daughter under sixteen, given to a father, authorizes a recovery by the putative father of a bastard. *Rex* v. *Cornforth, 2 Str. 1162.*—Rep.

gives to others all the rest of those proceeds. He clearly did not contemplate the sale of the real estate subject to her dower; and, if so, it must be held that the provision made for her was intended to be in lieu of her dower, and she must be put to her election. See *Colgate's ex'rs* v. *Colgate*, *8 C. E. Gr. 372*, and *Savage* v. *Burnham, 17 N. Y. 561*.

In the brief of defendants' counsel, it is insisted that the gifts to the testator's sons Alexander and Joseph must fail, because it appears that those persons are illegitimate children of the testator. It is not apparent on what ground this claim is rested. A general bequest to a testator's " children " will indeed be held to refer to his legitimate children alone, but a bequest to his illegitimate child, by name, will undoubtedly be good. The gifts in the case under consideration are to the testator's sons Alexander Stewart and Joseph Stewart. He had no legitimate sons by those names, but had illegitimate ones.