SAME TERM.    *Maynard, Johnson, Welles, and Selden,*
Justices.

## WILLIAMS *vs.* HUTCHINSON.

A person is not bound to maintain the child of his wife, by a former husband; nor is he entitled, by law, to claim the services of such child, unless the latter chooses to render them.

But if an individual does in fact support and maintain his step-child in his family, and treats him as a member of it—standing *in loco parentis* to him—under such circumstances the law will not imply a promise to pay for services rendered by the step-child, nor permit a recovery therefor, unless an express promise is shown, or something to prove that such was the expectation, on both sides. WELLES, J. *dissenting.*

The fact of the step-father's standing *in loco parentis* effectually repels all presumption of service for hire or wages, and renders an express promise indispensable to the maintenance of an action by the step-child. WELLES, J. *dissenting.*

MOTION to set aside report of referees. The action was assumpsit, for labor and services. The plaintiff's mother married the defendant when the plaintiff was about nine years of age, and the plaintiff then went to live with the defendant, with his mother. He continued to reside there until he was about seventeen, when he left the defendant, and did not return. While he lived with the defendant he was treated in all respects as a member of his family, was clothed and schooled in the same manner as the defendant's children were, and performed labor suitable for a person of his age and condition. There was no proof of any agreement or understanding that he was to receive wages, and account for his board, schooling and clothing; and no accounts were kept on either side. At the time of the marriage the defendant had six sons, and the plaintiff's mother three. The only evidence on the subject of an undertaking to pay was, that when the plaintiff and another brother were about leaving the defendant, the latter said he did not wish them to leave, and was willing to pay for what they had done. It was a remark made by the defendant in the presence of the plaintiff and his mother and the other members of the family, but

Williams *v.* Hutchinson.

not addressed to any one in particular. Evidence was given as to the value of the plaintiff's services, over his board, clothing, &c. under objection from the defendant. The referees reported in favor of the plaintiff $81,81.

*E. Van Buren*, for the plaintiff.

*T. R. Strong*, for the defendant.

JOHNSON, J. A person is not bound to maintain the children of his wife by a former husband. (*Gay* v. *Ballou*, 4 *Wend. Rep.* 403.) Not being bound to provide for them, or furnish them with any support, he is not entitled to their services provided they choose to live elsewhere; and in the latter case he cannot recover for their services, either in his own right or in that of the mother. (*Commonwealth* v. *Hamilton*, 6 *Mass. Rep.* 273, 275. *Freto* v. *Brown*, 4 *Id.* 675. *Worcester* v. *Merchant*, 14 *Pick.* 510.) While the mother remains a widow she is bound to provide for her children, and is entitled to control them while under age, and to collect their earnings while in the service of others. But when she marries, her legal capacity is gone, and she can no longer control the persons, or property, or earnings, of her children.

In this case, there is no evidence of any express promise to pay, and no proof that there was any expectation, on either side, while the services were being performed, that payment was to be made or demanded. The remark proved to have been made by the defendant, as the plaintiff was about leaving, that he did not wish him to leave, and was willing to pay for what he had done, amounts to nothing more than the expression of a willingness, on the defendant's part, to pay the plaintiff for his services if he would stay with him. It furnishes no evidence of any prior understanding or agreement, but, on the contrary, rather rebuts the presumption, as the remark was not particularly addressed to the plaintiff, and no question was raised or suggested by him about any pay. Indeed, there is nothing in the case to show that, up to this time, the plaintiff

had ever thought of asking pay of the defendant. The case must, therefore, turn entirely upon the question whether, under the circumstances of this case, the law will imply a promise on the part of the defendant. I think there can be no doubt that it will not. It is clear, from the case, that the plaintiff lived with the defendant as a member of his family, in all respects, and was treated by the latter as one of his own children. That although the defendant was not bound to provide for him, or furnish him with any support, and was not entitled by law to claim the plaintiff's services if he had not chosen to render them, yet that he did in fact support and maintain him in his family, and as a member of it, and stood *in loco parentis* to him. The books are full of cases to show that, under such circumstances, the law will not imply a promise to pay for services thus rendered, or permit a recovery, unless an express promise is shown, or something to prove that such was the expectation on both sides. (*Robinson* v. *Cushman,* 2 *Denio,* 149. *Andrews and wife* v. *Foster,* 17 *Verm. Rep.* 556. *Fitch* v. *Peckham,* 16 *Id.* 150. *Swires* v. *Parsons,* 5 *Watts & Serg.* 357. *Wiers* v. *Wiers' adm.* 3 *B. Monroe,* 645. *Candor's appeal,* 5 *Watts & Serg.* 513. *Willis* v. *Dun, Wright,* 134.)

In the case of *Andrews and wife* v. *Foster,* the plaintiff's wife, who was a niece to the defendant's wife, went to live with the defendant at the age of nine, and lived with and was brought up by him until she came of age, when the defendant told her she was free to go, but if she staid with him he would do well by her. She continued to reside with the family as before, four or five years, when she left; and after her marriage, joined with her husband in an action for her services after she became of age. No accounts were kept, on either side, and no request made for payment when she left. And the court held that she could not recover, as she lived there after, as before, her majority, as a member of the family, the defendant standing *in loco parentis.* That the law would not imply a promise to make a pecuniary compensation under such circumstances.

The argument that the defendant could not lawfully claim the plaintiff's services, and was under no obligation to maintain

and take care of him as a parent, does not help the plaintiff's claim in this case. The case turns upon different considerations of law and public policy. The defendant voluntarily took upon himself the duties of a parent, and, for aught that appears, discharged them faithfully. The plaintiff accepted the defendant's shelter and protection, and rendered his services and obeyed the defendant's commands, voluntarily, as long as he chose, and no longer. He cannot now be permitted to turn it into a contract and recover, because, forsooth, he may be able to prove that his services were worth something more than his maintenance and support. The relation in which the parties stood, for the time being, forbid it; unless it can be shown that there was an express agreement or definite understanding at the time. Nor is it of the least consequence that the plaintiff was an infant, and incapable of binding himself by any express promise or agreement; as there was nothing of the kind between the parties; and unless the law implies a promise on the part of the defendant, there can be no recovery. And we have seen that, under the circumstances of this case, no promise is implied on his part. The fact of his standing *in loco parentis* effectually repels all presumption of service for hire or wages, and renders an express promise indispensable to the maintenance of the action. (*Chit. on Cont. 5th Am. from 3d Lond. ed.* 148. *Cooker* v. *Martin,* 4 *East,* 76.) The family relation or compact is not that of service on the one hand, or protection and support on the other, for pecuniary reward. It rests upon a foundation essentially different in all its parts, and is a relation which all just and politic laws should be careful to cherish and protect.

The report of the referees should be set aside.

MAYNARD, P. J. and SELDEN, J. concurred.

WELLS, J. dissenting. It is contended on the part of the defendant, that the plaintiff is not entitled to recover, for the reason, that during the time the services were rendered for which the action is brought, the plaintiff lived with the defendant as

a member of his family, was clothed and schooled by him, and treated in all respects as he treated his own children; that the defendant stood *in loco parentis* to the plaintiff while the services in question were being rendered, and that it would not be in accordance with the understanding of the parties, and would be against public policy, to allow a recovery under such circumstances.

I have not been able to find a case where this express point has been decided. It has been repeatedly decided, and I think with great propriety, that where parties competent to contract, enter into an arrangement by which one becomes a member of the family of the other, under circumstances to forbid the idea of a promise or contract for pecuniary compensation, no action will lie to recover such compensation for services rendered during the existence of such arrangement, whatever the value of such services may have been. (*Robinson* v. *Cushman*, 2 *Denio*, 149. *Andrews and wife* v. *Foster*, 17 *Verm. Rep.* 556. *Fitch* v. *Peckham's Ex'rs*, 16 *Id.* 150. *Swiss* v. *Parsons*, 5 *Watts & Serg.* 357, 513. *Weir* v. *Weir*, 3 *B. Monroe*, 645.) In these and all the cases I have met with, the parties to the arrangements out of which the supposed legal liability to pay for the services rendered arose, were adults during the time the services were rendered, and perfectly competent to bind themselves by contract, or to consent to any arrangement upon which the law would imply a contract or agreement to pay, or not to pay, for services rendered, or to waive, either in express terms or by implication, any legal right which would otherwise vest.

In the present case, the plaintiff was a son of the defendant's wife by a former husband; and it is conceded that the defendant was neither bound to support him nor entitled to his services. The services in question were rendered during the plaintiff's minority, and we are to assume they were worth to the defendant the amount which the referees have reported, over and above the value or expense of his boarding, clothing, &c. It would therefore seem, upon plain principles of equity and justice, that the defendant ought to pay this balance—

Williams *v.* Hutchinson.

Upon what principle should he be excused? He has had the plaintiff's services, and why should he not render an equivalent? The rule of law applicable to the family relation, and to persons standing *in loco parentis*, is invoked in his behalf; and it is said that as no accounts were kept between the parties, and no agreement on the part of the defendant to pay for these services has been proved, no promise to pay, under the circumstances of the case, can be presumed. Even if it were proved that no express promise was made, it does not follow that the law will not imply one. Promises are implied in consequence of the nature of the transaction. An express promise in such a case, is out of the question. It is where there is no express promise that the law will sometimes imply one. When there is an express promise there is no need of an implied one. An implied promise does not mean that an actual express promise is presumed, but that the law will imply, or intend, or assume a promise for the party, where none has been expressly made, in cases where reason and justice dictate that he should do the thing which the law thus implies he has agreed to do.

The rule of law referred to, as applicable to persons standing in the family relation, must be, and I think is, based upon the understanding or agreement of the parties to such arrangement. The arrangement itself is an agreement, and supposes parties capable in law of entering into it. But an infant cannot bind himself by either an express or implied promise or contract. This is the general rule, and I am aware of only one exception to it, and that is, his liability to pay for necessaries. This exception cannot aid the defendant, because the referees have allowed his claim for boarding and clothing and schooling, and the amount reported due is only for the excess of the value of the plaintiff's services after deducting such claim of the defendant. The reason why contracts with infants, except for necessaries, are void or voidable, is the indulgence the law has seen fit to give them, who are supposed to want judgment and discretion in their contracts and transactions with others, and the care it takes of them in preventing them from being imposed upon or overreached by persons of more years

---
Williams *v.* Hutchinson.
---

and experience. It will not be contended that a valid and binding promise will be implied in the case of an infant, where if the promise had been expressly proved, it would have been void.

If the doctrine in question be applicable to the case of an infant, I do not see but it must cover every imaginable case, where the relationship is once established. There are undoubtedly cases where a young man of sixteen years is capable of doing the labor of a man. Suppose such a case, and where the party takes his position in the family of his employer; makes it his home there as one of the family; is fed and clothed in the same manner, and from the same source, as the employer himself; no agreement made, and no accounts kept; and he serves his employer faithfully for five years and until he becomes of age, and the jury should be of the opinion that his services were worth $10 a month during the whole time, over and above his clothing and boarding and all other benefits received by him, shall he, by reason of his supposed assent to such family arrangement, be denied when he comes of age, the large balance of $600 which is justly his due? Suppose in the same case the infant, at the age of twenty, becomes permanently disabled by the loss of a limb or a chronic disease ; the other party is not bound to take care of or provide for him a single day, but may leave him to be cared for by public charity; and according to the doctrine contended for, he is not accountable for the $480 which, at the time the disability commenced, he was in equity and justice bound to pay. The case of an adult is entirely different. His assent to the arrangement might and would be implied.

There are cases holding that a man is liable to strangers for necessaries furnished an infant where the former stands *in loco parentis* to the infant, without reference to his legal liability to support him ; but they rest upon the ground that the party has suffered the relation to be formed and to continue publicly, and that strangers have a right to infer either such a relation as would constitute a legal liability to support the infant, or an implied authority to the infant to contract in his

Williams *v.* Hutchinson.

name.  In such a case, the party could put an end to his lia-
bility to pay for any supplies in future, by dissolving the rela-
tion assumed, and turning the infant away.

*Gay* v. *Ballou,* (4 *Wend.* 403,) is a strong case in favor of
this report.  The action was brought to recover for the main-
tenance of the defendant while an infant, for the period of more
than three and an half years, and for necessaries furnished
during that time.  It appeared that the plaintiff married the de-
fendant's mother in December, 1819, when the defendant, being
about seventeen years of age, went to reside with the plaintiff,
and continued with him until May, 1823, at which time, his
mother having shortly before died, he left the plaintiff's house.
The cause was tried before referees, who made a report in favor
of the plaintiff of $186,91.  The court held that the plaintiff
was entitled to recover for the necessaries furnished the defen-
dant while an infant and while so residing with him as a part
of his family; Sutherland, J. who delivered the opinion, hold-
ing that although it was claimed that an express promise had
been proved after the defendant became of age, yet that it was
unnecessary, for, as the claim was for necessaries furnished, he
was liable upon an implied promise to pay for them.  If the in-
fant's services in that case had been worth more than the neces-
saries furnished, it is difficult to perceive why he would not
have been allowed to recover the excess.  Indeed I am not able
to discover the difference in principle between that case and the
present.

Upon the whole, I think the motion to set aside the report
of the referees should be denied; and I place my opinion upon
the ground of the legal incapacity of the plaintiff, at the time
the services were rendered, on account of his non-age, to enter
into or give his assent to any agreement which should deprive
him, on coming of age, of the right to recover whatever his
services were worth, after deducting the defendant's claim for
necessaries furnished.

Motion to set aside report granted.