CHILCOTT *vs.* TRIMBLE and others, executors, &c

When a parent is willing to support his infant child, and a relative, without his request but with his assent, receives the child into his family and supports it as a child of his own, no agreement of the father to pay for such support can be implied.

The moral obligation of a parent to support his child imposes on him no liability to pay for its support, furnished by a relative, without his request.

The law of nature which, requires the parent to support his infant offspring, designates his own house as the place where that duty shall be performed.

A consideration past and executed is not sufficient to uphold an assumpsit, unless moved by a precedent request.

An implied promise does not differ from an express promise, except in the evidence by which it is proved.

THIS action was commenced in 1842, and was brought upon an indebitatus assumpsit, to recover for the board, lodging, washing, doctoring and schooling of Harriet, the infant daughter of John Chilcott, the defendant's testator, by the plaintiff, before the death of the testator, done and performed at his special instance and request. Plea, the general issue, and notice of set-off, &c. The cause was referred to a sole referee, who in March, 1852, reported in favor of the plaintiff $135 damages. The case came before the court on a motion by the defendants, to set aside the report.

The following facts appeared in the case. In 1814, the wife of John Chilcott, the testator, died, leaving a daughter, Harriet, then four months old, the only child of the testator. The father and mother of the testator (the grand parents of the child) resided in the same neighborhood, and took the child into their family, on the death of its mother. The plaintiff, a brother of the testator and uncle of the child, was then unmarried, and resided with his parents. In 1816 the testator married a second wife, and took the child home to his own house, where it remained a short time; but it was soon after taken back to its grand parents; it did not appear by whom. The child continued with its grand parents until they were both dead. The grandfather died in 1825, and the grandmother in 1828. While the child was living with its grand parents the testator was requested by one of them to get a frock for it, but he declined, saying, "if you

Chilcott *v.* Trimble.

are a mind to take the child away from me and my wife, you must support her at your own expense. I am willing to take her home and bring her up if you will let me, but if not, you must take care of her at your own expense."

In 1823 or 1824 the plaintiff married, but he and his wife continued to live in the same family with his parents till the death of the latter. After their death, Harriet remained in the family of the plaintiff till 1832, as a member of his family. The plaintiff furnished her her clothing and paid for her schooling in the district school, and she performed such services in the family as are usually performed by girls of her age, such as housework, spinning, &c. In 1832, the testator took her home to his own house, but she remained there but a short time. She went out to work at different places, and made it her home at the plaintiff's, till 1836 or 1837, when she was married. From 1832 till she was married she was working out more than half the time. The testator died in 1840, the latter part of the year. One witness swore that in July, 1840, which was after Harriet's marriage, he heard the testator say that he was going to pay the plaintiff for keeping Harriet, for he, the plaintiff, had never had any thing for keeping, clothing and schooling her; that he, the testator, now had his business so arranged that he could or should pay him. And in November of the same year, the same witness heard him say he had as yet not paid the plaintiff any thing for keeping, clothing and schooling Harriet, but that he was going to pay him. Harriet herself was examined as a witness for the plaintiff, and testified that when her father, the testator, came to take her home in May, 1832, the plaintiff and his wife said that he was taking her away at a time when she would be of some use to them, and that he must pay them for taking care of her; to which the testator replied that "he would settle with them for taking care of her."

There was evidence on both sides as to whether the value of Harriet's services, while living with the plaintiff, was equal to the expense of her support and maintenance and schooling.

The referee certified that he allowed the plaintiff for the care and maintenance of Harriet from the death of her grandmother

in 1828, four years and a half, at $30 a year.   The defendants moved to set aside the report.

*A. Pond,* for the defendants.   I. The evidence is insufficient to sustain a judgment in favor of the plaintiff.   (1.) A father is not liable on an *implied promise,* to pay for necessaries furnished his minor child by a stranger, unless they were furnished at his *request.*   (1 *Bl. Com.* 448, *note* 1.   *Chitty on Cont. Perk. ed.* 140, 1.   *Mortimore* v. *Wright,* 6 *Mees. & Welsb.* 482.   *Seaborne* v. *Maddy,* 9 *C. & P.* 497.   *Raymond* v. *Loyl,* 10 *Barb.* 433.   *Edwards* v. *Davis.* 16 *John.* 281.)   (2.) Though a request may sometimes be inferred from circumstances, yet there are none in this case to warrant such inference.   The evidence shows that John Chilcott desired that his daughter should live in his own family.   And he expressly told his mother if she kept her, she must do so at her own expense.   Under such circumstances no request could be implied, at least until notice to the father that she was being furnished, with an expectation that he would compensate the person furnishing her support.   (*Urmston* v. *Newcomen,* 4 *Ad. & El.* 899.)   (3.) The plaintiff stood in *loco parentis* to Harriet while she resided with him; and the law will not imply a promise to pay him for her support and maintenance, during the existence of such relation.   (3 *Comst.* 312. 5 *Barb.* 122.)   II. Nor can the action be sustained on the *express promise,* testified to by Harriet.   (1.) It was a promise merely to settle, not to pay.   Though a promise to settle a liquidated debt about which there is no dispute, is deemed a promise to pay, sufficient to take a case out of the statute of limitation, yet we insist it is not so where the promise is relied upon to create the debt as well as the agreement to pay it.   (4 *Denio,* 225.   21 *Wend.* 640.   8 *Id.* 800.)   (2.) An express promise can only revive a precedent good consideration, which might have been enforced at law, through the medium of an implied promise, had it not been suspended by some positive rule of law; but can give no original cause of action, if the obligation on which it is founded, never could have been enforced at law, though not barred by any legal maxim or statute provision.   (3 *B. & P.*

247, *n. a.* 11 *Ad. & El.* 438. 8 *Q. B.* 482. *Chit. on Cont.* 46, *Perk. ed.* 13 *John.* 257. 24 *Wend.* 97. 1 *Hill*, 532. 2 *Barb. S. C. Rep.* 420. 5 *Id.* 556, 8. *Raymond* v. *Loyl*, 10 *Id.* 483.) (3.) Nor can the promise be fortified by the assumption that the plaintiff did that to which John Chilcott was legally compellable; (even if such a consideration could avail in any case, which we deny;) as the parent's liability to maintain his children is only statutory, and is prospective, and can only be enforced in the manner prescribed by the statute. (1 *R. S.* 634, § 1. 16 *John.* 281. 5 *Id.* 175. 7 *Conn. Rep.* 57. 3 *Pick.* 207. 19 *Id.* 429. *And see cases cited to* 1*st point.*) (4.) There being no implied promise on the part of John Chilcott, if any one was liable to pay the plaintiff for the support of Harriet, she was liable herself; and a promise of John Chilcott to pay therefor was a promise to pay the debt of another, and to be valid should have been in writing. III. The referee, in his report, has allowed the plaintiff for keeping Harriet down to a period subsequent to her leaving the plaintiff. This is error. IV. The defendants are in no event personally liable to the plaintiff; nor was it proper for the referee to award costs against them. The report is erroneous in both particulars.

*R. H. Hale*, for the plaintiff. I. The evidence in the case shows that Harriet Hodgman was maintained by the plaintiff, and is sufficient to raise a presumption of an original request on the part of the defendant's testator. Such request may be inferred from circumstances, and from the beneficial nature of the transaction. (14 *John.* 188, 378. 5 *Cowen*, 531. 3 *John.* 201.) A gratuity will not be presumed. II. The express promise of the defendant's testator, proved by H. Hodgman, is sustained by a sufficient consideration, even if no request express or implied is proved. "Where the plaintiff *voluntarily* does that unto which the defendant was legally compellable, and the defendant afterwards in consideration thereof *expressly* promises," the promise will be upheld. ( *Wennall* v. *Adney*, 3 *B. & P.* 247, *note.* 1 *B. & A.* 104. 1 *Cr. & Mee.* 818. 1 *Smith's Lead. Cas.* 67 ; *Am. ed.* 167, *and n.* 170. *Chit. on Cont.* 62, 8*th Am. ed.* 1 *Wms.*

*Saund.* 264 *a, note* 1.) The father is bound in law to furnish necessaries for his infant child. (13 *John.* 480.) III. The whole case before the referee turns on questions of fact, and the evidence being sufficient to sustain his decision, it should not be disturbed.

*By the Court,* WILLARD, P. J. For the fourteen years during which the infant resided in the family of her grand parents, no claim was asserted against the father, for her care and maintenance, either by the grand parents or either of them in their lifetime, or by their personal representatives since their death. It is quite clear that they supported the infant, out of affection towards her as their grandchild, and with no expectation of a pecuniary recompense from the father.

When the grandmother died, in 1828, she, together with the infant, then of the age of fourteen years, was a member of the plaintiff's family. The infant continued such member, till sometime in 1832, when her father took her to his own house. She, however, made it her home, most of the time between 1832 and her marriage in 1837 or 1838, when she was not out at work, in the family of the plaintiff. There was no evidence that the testator ever requested the plaintiff to take charge of her, at any time. The presumption is, that being in the plaintiff's family at the death of her grandmother, she continued to reside there, as a member of the family, till she left the first time, with her father, in 1832. It was for the support of the infant during this period of about four years, that the referee reported in favor of the plaintiff.

I. There having been no request from the testator to the plaintiff to support the infant, the action cannot be sustained except upon the ground of an *implied promise.* An implied promise does not differ from an express promise except in the evidence by which it is proved. The one is proved by indirect and the other by direct evidence. When the parent is willing to support his infant child, and a relative, without his request but with his assent, receives the child into his family and supports it as a child of his own, no agreement of the father

to pay for such support, can be implied. In the case of *Van Valkinburgh* v. *Watson*, (13 *John.* 480,) it is said, that when the infant is *sub potestate parentis*, there must be a clear and culpable omission of duty on the part of the parent, to afford support, in order to authorize any other person to act for, and charge the expense to, the parent. Here was no omission of any kind on the part of the testator, and therefore, upon the authority of that case the action could not be sustained. The dicta in *Van Valkinburgh* v. *Watson*, go further than any other case, to sustain an action against a father for necessaries furnished an infant child. They place the liability to support an infant child, in the same category as the liability of the husband to support his wife. Although the case itself was rightly decided, yet some of its reasoning was questioned by Justice Hand, in delivering the opinion in *Raymond* v. *Loyl*, (10 *Barb.* 485.) But whether right or wrong, the reasoning of the court does not go far enough to uphold the present action upon the ground of an implied assumpsit. The moral obligation which a parent is under to support his child imposes on him no liability to pay for its support furnished by a relative without his request; certainly not when there has been no culpable omission on his part to furnish such support in his own family. (*See Mortimer* v. *Wright*, 6 *M. & W.* 481; *Angel* v. *McClelland*, 16 *Mass. Rep.* 27; *Edwards* v. *Davis*, 16 *John.* 281; *Raymond* v. *Loyl, supra.*)

The infant, during the period for which the recovery has been had, was a member of the plaintiff's family. He stood in *loco parentis* to her. She could not have maintained an action against him for her services in the family, nor he against her or her father for her support. (*See Williams* v. *Hutchinson*, 3 *Comst.* 312; 5 *Barb.* 122.) If he had desired to occupy a different relation, he should, on the death of his mother, have returned the child to the testator, or given notice that he would no longer keep her without a compensation. This is not a case where the law implies a promise, from the beneficial nature of the service. (16 *Mass. Rep.* 27. 5 *Cowen*, 531.)

II. The evidence relied on to prove an express promise re-

lates to a time after the service was performed. The consideration, therefore, was past and executed, and not sufficient to maintain an assumpsit, unless moved by a precedent request. (1 *Saunders*, 264, *n*. 1.) There are some cases in which it has been held that an action can be maintained upon an express assumpsit, founded upon a past consideration beneficial to the party, and when he was under a moral obligation to do what he promised. The case of *Doty* v. *Wilson*, (14 *John*. 378,) was decided upon this principle. The plaintiff as sheriff having arrested the defendant on a *ca. sa.* suffered him to escape, and was compelled to pay the amount of the judgment to the plaintiff in the original action. The defendant afterwards promised to pay the sheriff the amount, and it was held that the latter could recover upon that promise. Thompson, chief justice, says, where a man pays a sum of money for me, without my request, and I afterwards agree to the payment, this is equivalent to a previous request to do so. The benefit to the defendant, connected with his express promise to pay, must be deemed equivalent to a previous request. It was an adoption of the payment as made for the benefit of the defendant, and a subsequent ratification is equivalent to an original command. *Oatfield* v. *Waring*, (14 *John*. 188,) was decided upon the principle that a request may be implied from the beneficial nature of the services. These cases must be taken with some qualification.

In *Smith* v. *Ware*, (13 *John*. 257,) Spencer, J. adopts the language of the note to 3 *Bos. & Pul.* 249, thus, " An express promise, can only revive a precedent good consideration, which might have been enforced at law, through the medium of an implied promise, had it not been suspended by some positive rule of law ; but can give no original right of action, if the obligation on which it is founded never could have been enforced, at law, though not barred by any legal maxim or statute provision." This case was approved in *Ehle* v. *Judson*, (24 *Wend.* 97, 99,) where Bronson, J. says, a merely moral or conscientious obligation, unconnected with any prior legal or equitable claim, is not enough to support an express promise. The testator in this case was under no moral or conscientious obligation to support

Chilcott *v.* Trimble.

his child out of his own family, and it was not shown that he ever neglected or refused to support her there, or requested her to be supported elsewhere. The law of nature, which requires the parent to support his offspring, designates his own house as the place where that duty should be performed. The promise, therefore, was without consideration, and for that reason the action cannot be maintained.

III. The evidence falls short of making out an *express promise.* The admission to a stranger that he was going to pay the plaintiff for the services in dispute was no promise to him. In 1840, eight years after the demand accrued, he said to the plaintiff he would *settle with him* for taking care of his daughter. In *Pinkerton* v. *Bailey,* (8 *Wend.* 600,) and *Stilwell* v. *Coope,* (4 *Denio,* 225,) evidence of a promise to settle a demand, was held to be tantamount to a promise to pay, so as to obviate the statute of limitations. But in both cases there was no dispute about the justness of the original demand. The only object of the evidence was to remove the effect of the statute bar. This did not require an express promise to pay, but only an acknowledgment of the present existence of the debt. (*Depuy* v. *Swart,* 3 *Wend.* 135. *Sands* v. *Gelston,* 15 *John.* 511, 519, *per Spencer, J.*) In the present case the original liability was not shown, independently of the promise to settle. The object of the evidence was, not to revive a debt barred by lapse of time, but to establish an original cause of action. I think it was not sufficient for that purpose.

The report of the referee must be set aside, and a new trial ordered, with costs to abide the event.

[FRANKLIN GENERAL TERM, July 5, 1852. *Willard, Cady,* and *C. L. Allen,* Justices. HAND, J. took no part in the decision; having been of counsel for one of the parties.]