## Hartman's Appeal.

1. When the relation of parties is such as to negative the idea that services were rendered in expectation of payment, they cannot be made the basis of a legal claim.

2. When services have been rendered in expectation of a legacy, the law will imply no promise to pay for them.

3. Where a person went to live with another apparently as a friend, and so continued to live during his life, although sufficient for a consideration for an express promise, such a promise must be *direct, clear*, and *positive*, in order to sustain an action on it.

4. Declarations which may be only expressions of intention, are not a promise sufficient to sustain an action; although declarations of a man, stating what he has agreed to do, are evidence against him.

APPEAL from the decree of the Orphans' Court of *North-*

*ampton County,* distributing the estate of Bartholomew Huber, deceased.

Bartholomew Huber, of Saucon Township, Northampton County, died about the 17th September, 1856, having first made his last will and testament, dated the 2d day of November, 1850, which was duly admitted to probate on the 29th day of October, 1856, upon which letters testamentary to Jacob Hartman and Mary Huber, the executors named in the said will, were issued, on the said 29th October, 1856. By this will the testator directs all his property, real, personal, and mixed, to be equally divided between Jacob Hartman and Mrs. Mary Huber, the parties to whom the execution of his will was intrusted. Bartholomew Huber was a single man, a widower without children. He came to the house of accountant, Jacob Hartman, on or about the 1st of April, 1850, and took his residence. He remained there, with a short interruption, until his death, 17th of September, 1856. On the 2d day of November, 1850, he made and executed his last will and testament, by which he directed his whole estate to be equally divided between the accountant, Jacob Hartman, and Mrs. Mary Huber, the exceptant. The real and personal estate amounted to $2,598 70.

The debts, other than the claim of accountant and for the board and attendance on testator, amount to $1,307 77. About the 7th of May, 1852, the testator fell and broke his hip-joint. He continued an invalid from that time to his decease. He was kept in a room by himself—was furnished with fire and all the attendance required by a sick man. During the time he was confined, he repeatedly spoke of the trouble he was to Jacob Hartman, the accountant, and that the accountant must be paid, if it took the whole of his estate, or all that he was worth. On the part of the exceptant, it is alleged that all the services Jacob Hartman, the accountant, rendered, were in expectation of a legacy, and that he has no claim beyond what is given to him in the will.

The matter of the account was referred to Philip Johnson, W. H. Armstrong, and Lewis H. Stout, Esq., auditors, who reported—

"That it was the intention of the testator, at the time of making his will, to provide for himself a home with Jacob Hartman and Mary Huber, residuary legatees, so that each would be equally burthened with his support and maintenance and equally compensated, and that such was the understanding of the said Jacob Hartman.

"That, as the testator could not have apprehended the accident which afterwards befell him, and rendered his condition extremely burthensome to Jacob Hartman, in whose house he

was *confined*, and from which he was unable to be removed, the auditors are of the opinion that the accountant is entitled to compensation for the excess of care, expense, and trouble which this occurrence brought upon him and his family, and that he is entitled to a fair compensation for the ordinary care and trouble which he would have had during half the lifetime of the testator if the accident had not occurred, he having kept him the whole time, when it had been understood that he should have kept him half that time:" and made distribution and appropriation accordingly.

To this report Mary Huber filed exceptions to the allowance to Jacob Hartman,

" That, inasmuch as he had rendered the services in taking care of and providing for Bartholomew Huber in expectation of a legacy, and upon an agreement to accept a certain fixed legacy as compensation therefor, he cannot now claim pay beyond the amount of said legacy."

Jacob Hartman, the accountant, also excepted to the report of the auditors.

December 18th, 1858, the court overruled the exceptions of Jacob Hartman, and sustained those filed by Mary Huber, and made some corrections in the auditors' calculations, and decreed distribution accordingly.

From this decree Jacob Hartman, the accountant, appealed, and assigned for error the decree of the court.

*A. E. Brown*, for appellant.

From all the circumstances of this case, it must be plain that the accountant had a legal, just, and honest claim for the full amount of compensation he asked for services rendered to the testator, unless something has been shown to defeat him. The testator was not a relative of his, and had no claim upon him, and yet it appears that he made accountant's house his home from April 1st, 1850, until 17th of September, 1856, when he died. That, during all that time, he received the most faithful attendance by accountant and his family, and was nursed by them with the greatest tenderness. The court below have held and decreed that accountant is not entitled to any compensation, except that he may come in as an equal distributee with Mrs. Mary Huber, a relative of testator, but who had rendered no service to testator, as appears by the evidence.

From the situation and relations of the parties to each other, the law would imply a contract between them. *Hertzog* v. *Hertzog*, 5 Cas. 468–469; *Swires* v. *Parsons*, 6 W. & S. 357.

But we are not left to inference to support the claim of the accountant. We have the express declarations on the part of

the testator, showing how he regarded the obligations he was under to pay the accountant, and his promise to that effect.

Herman M. Fetter, a witness on part of accountant, says, speaking of testator, "He told me his calamity and situation; he told me he received every attendance that a person could require. Complaining to me that he made a great deal of trouble to the family, which he was well aware of: 'But they must be well paid for it, as my circumstances do not permit me to be removed.' We had a good deal of conversation, but it was all to that effect." Henry Blyler, another witness, says, after describing the injury testator had received, that testator told him that Hartman and another man picked him up and carried him in there. He then said, "*I will never forget Jac. and he shall be well paid for it.*" This conversation was on the 7th May, 1852, shortly after testator broke his leg. This witness lived on testator's lot, and was his barber and shaved him. He speaks of being there often. He says again, "He told me that Jacob must be well paid for his trouble. He was very troublesome." Joseph Huber says he shaved testator 2½ years. After describing the situation of the testator, he says he, testator, complained that I (he) was making a great cost and trouble, but I cannot help it. He said, "*Hartman must be paid for his cost and trouble if it takes my last penny.*" He said it two or three times. Hartman was by. This was two or three weeks previous to his death.

*Roberts* v. *Kidd*, 1 Yeates 212; 1 Esp. N. P. 87; *Snyder* v. *Cato's Adm'r*, 4 Yeates, 358; 1 Greenleaf's Ev. sec. 209; *Youndt's Appeal*, 1 Har. 580; *Haverstock* v. *Sarbach*, 1 W. & S. 390.

*Wm. S. Marx* and *M. Goepp*, for appellee.

Jacob Hartman claims that there are due to him, as a debt, certain moneys from this estate for the support and maintenance of the testator. To substantiate this claim he must either prove an express contract or circumstance from which the law would imply a contract. Let us examine the latter branch of the alternative first.

What are the circumstances relied upon as raising an implication of contract? The rendering of the services for which the compensation is claimed. Now it is undoubtedly correct that, ordinarily, the law will imply, from the rendering of services, a contract to pay for them. But it is equally well settled that where services are rendered under circumstances which negative the idea that the parties, at the time the services were rendered, contemplated compensation, no contract will be implied. This subject is very fully discussed in *Hertzog* v. *Hertzog*, 5 Casey, 465. Where the relations between the parties are

such as to account for the rendering of the services by the one to the other without necessitating a resort to the implication of a contract, there that implication will not be made. The most frequent application of the rule has been made to transactions between parents and children. Many of the cases are cited in the opinion of the court in *Hertzog* v. *Hertzog*, p. 469. The point is again decided in *Mosteller's Appeal*, 6 Casey, 473. In *Defrance* v. *Austin*, 9 Barr, 310, the rule is thus stated by Burnside, J. "It was ruled, in *Swires* v. *Parsons*, 5 W. & S. 357, that the performance of labor generally, by one for another, raises an implied assumpsit that it will be compensated, *but this implication may be rebutted by proof of circumstances showing such a relation between the parties as repels the idea of contract.*" The relation between the parties there was that of a nephew who had been received into his uncle's family and treated as one of the children. It is unnecessary to cite more of the cases in which the relations of father and son, nephew and uncle, &c., have been held to rebut the implication of contract for services rendered. Every one is familiar with them; they constitute a long train of decisions, closing with *Mosteller's Appeal*, already referred to.

Another class of cases where the relation between the parties has been held to rebut this implication of contract is the class of cases between an expectant legatee and the expected testator. Services rendered in expectation of a legacy cannot be made the subject of charge. 4 D. 111, *Little* v. *Dawson*; 5 W. & S. 358, *Swires* v. *Parsons*; 2 Strange, 728, *Osborne* v. *The Governors of Guy's Hospital.*

The opinion of the court was delivered May 4th, 1859, by

STRONG, J.—The relation of debtor and creditor is commonly presumed from the performance and receipt of services. But when the relations of the parties are such as to negative the idea that the services were rendered in expectation of payment, they cannot be made the basis of a legal claim. Thus, where services have been rendered in expectation of a legacy, the law will imply no promise to pay for them. *Swires* v. *Parsons*, 5 W. & S. 358, and the cases there cited. If it were not so, a man might be made a debtor without his consent, and even without his knowledge.

The evidence returned with the report of auditors in this case and made a part of the report appeared to establish that Bartholomew Huber, the testator, originally went to live with Hartman, the appellant, as a friend. Certainly at first it was not contemplated between them that one should charge and the other should pay for boarding and attendance. This is plain from what took place when Huber afterwards made his will. The conversation

between him and Hartman and Peter Huber, the husband of the other legatee in the will, which occurred about the time it was made, not only indicates that whatever services had been rendered had been given in expectation of being remembered in the will, but it shows a perfect understanding of all the parties that by the legacies the testator was making provisions for his subsequent support and attendance. · Both Peter Huber and Hartman expressed their *entire satisfaction with the arrangement.* That it referred to the future as well as to the past appears from its having been agreed that he might thereafter go from Hartman's to Huber's and return at his pleasure. He might make his home at either place, though he called the house of the appellant his house. We find nothing in the evidence to show that there was any understanding that the expenses of his support should be equally borne by Huber and Hartman. Evidently in pursuance of this arrangement (for there is no proof of any other) the decedent remained principally with the appellant until his death. Until after his death the appellant never asserted a title to any other compensation than from what he expected from the will. During nearly five years he made no charge—he instituted no claim. He cannot now set up against a dead man's estate what was not a debt against him living.

And as, under the circumstances, the law implied no obligation on the part of Bartholomew Huber to pay, before the appellant can claim as a creditor he must prove an express contract. Admitting, what is not entirely clear, that the services rendered as these were, imposed a moral obligation to do more than was done by the will, sufficient for a consideration for an express promise, yet the evidence of such a promise must be *direct, clear,* and *positive.* Loose declarations made to others, or even to the claimant himself, will not answer. That which may be only an expression of intention is inadequate for · the purpose. It must have been the purpose of the decedent to assume a legal obligation, capable of being enforced against him. The ordinary expressions of gratitude for kindness *to* old age, weakness, and suffering, are not to be tortured into contract obligations. · See *Bash* v. *Bash,* 9 Barr, 262. Of such an express contract we find no satisfactory evidence, nor did the auditor find any. To Fetter, one of the witnesses, Huber said on one occasion that he made a great deal of trouble to the family (Hartman's), which he was aware of; but they must be paid for it. To Blyler, another witness, he said, "I will never forget Jake (Hartman), and he shall be paid for it." He was speaking of Hartman's having taken him up and carried him into his own room when he had fallen and broken his leg. To the same witness he said, "Jake must be well paid

for his trouble." These declarations were not made to Hartman, nor in his presence. To treat them as evidence of an express contract would be giving to them an effect never intended. Express contracts between parties are not made in casual conversations with others, though undoubtedly the declarations of a person stating what he has agreed to do is evidence against him. The same observations may be applied to what was proved by Joseph Huber. To him the testator said, as he testifies, two or three weeks before his death, "Hartman must be paid for his costs and trouble if it takes my last penny." He said it two or three times. The witness adds that Hartman was by, but he does not say that this was said to him, or that he heard it or assented to it. This was quite insufficient evidence of an express assumption of a liability to pay that for the payment of which he had already made provision.

Upon a review of the whole case we are unable to perceive that the Orphans' Court erred in rejecting the claim of the appellant as a creditor, and in ordering distribution as they did. We discover no well-grounded objection to John S. Ruhe's deposition.

The decree of the Orphans' Court is affirmed.

See *Lantz* v. *Frey*, 14 P. S. R. 201, id. 19, id. 366; *Sanders* v. *Waggonseller*, 19 P. S. R. 248; *Gifford* v. *Halfman*, 3 Phila. R. 127.