H. SCHRIMPF, ADM'X v. J. SETTEGAST AND ANOTHER.

1. As a general rule, whenever services have been rendered to another, a contract of hiring and an obligation to pay will be presumed. Such a presumption, however, does not obtain between parent and child, or between near relatives ; and in other cases it may be repelled by proof of facts or circumstances showing that neither party contemplated such a contract or obligation, as when a person, influenced by motives of great friendship, lives with another and renders services, or when the services were rendered in expectancy of a legacy, or by a person who had been received into the family of another through motives of charity or humanity.

2. The weight of authority establishes the doctrine that when a person, through kindness or charity, has received an orphan child into his family, and treats it as a member of his family, he stands towards it *in loco parentis* so long as it remains in his family ; and he is bound for the maintenance, care, and education of such child, and entitled to its ser-

vices without other compensation, unless he has otherwise stipulated. See the opinion for a review of leading American cases on this question.

3. If, however, the party who has thus assumed the care of an orphan child fails to provide properly for its maintenance and education, a liability for its services may result, enforceable by the child on attaining its majority; and in such cases the facts out of which such a liability may arise are for the determination of the jury, under proper instructions from the court trying the case.

4. It was error to charge the jury in effect that the defendant was liable to the plaintiffs for the value of their services rendered during their minority, when the proof showed that he had found them orphans of tender years, sick and friendless, and had taken them into his family without having them bound to him under Article 3927, Paschal's Digest. The defendant's liability, and the extent of it, depended upon the care and education he had bestowed on the plaintiffs while under his charge; and these were questions of fact, to be determined by the jury from the evidence and under proper instructions by the court below.

APPEAL from Harris. Tried below before the Hon. James Masterson.

The opinion indicates such of the facts as are material in view of the rulings made.

*Gray & Botts*, for the appellant. The assignment of errors distinctly calls the mind of the court to the questions to be determined. They relate chiefly to the charge of the court as applied to the evidence, concerning the relation existing between appellees and the deceased, John W. Schrimpf, who took charge of them in their childhood and destitution, when no other friends and relatives were near. Indeed it is in evidence that the relatives of the children resided in Europe, and refused to care for them when informed of their situation. Appellant contends that the relation existing between her deceased husband and the Settegasts was that of a friend assuming to act *in loco parentis* for their benefit; and that this ought to have been left as a question for the jury to decide on the evidence; but the court assumed in its charge throughout that the relation of master and servant was created and contin-

ued.   This view was taken on the assumption that the statute of March 20, 1848, Section 44, concerning guardians (Paschal's Digest, Article 3927) is prohibitory in its effect upon any person assuming to act as guardian, or in place of the parent, unless he should first have the child bound to him as an apprentice. Holding this view, the court refused all charges asked by defendant below, tending to permit the jury to decide that question on the evidence.

Upon examination of the testimony the court will find some contrariety between the statements of witnesses, as to the manner in which the Settegasts were treated, and the value of their services.   There is undoubted testimony that they were left orphans, without relatives, and with an estate entirely too small to provide for them in such manner as to make it an object of interest to any one to take charge of them.   Epidemic yellow fever was prevailing when their father and step-mother died.   John W. Schrimpf had been a friend to their father.   The children were taken to his house, and raised with his own sons, until they became old enough to be employed about his business, of butchering.   His own son was also employed in that business with them, until he went with his parents to Europe in 1860, where they were detained during the war, and where John W. Schrimpf died.   On leaving home the Stettegasts, who had grown to be stout lads, were left in charge of the brother and partner in business.   The boys generally lived in the same house and ate at the same table with the family ; were clad and tended in sickness by Schrimpf and family ; were sent to school, taught to read and write, and tuition paid by Schrimpf ; and though they were employed about the butcher's business and driving cattle (as the son was also), they were thereby learning a trade, in which they have since become rich.   There is nothing in the evidence, as we think, conflicting with the theory that Schrimpf throughout was acting the part of a kind friend to the Settegasts.   While the facts shown in defense, as above stated, and other circumstances, all sustain that theory, they conflict with the idea that he was treating them as a mere employer of

servants.    The court cannot read the testimony carefully with-
out perceiving that the current of evidence of those likely to
know best, the conduct of Schrimpf cannot be reconciled with
the relation of master and servant which the court gave in
charge to the jury.

We respectfully submit that the district judge took a narrow
and contracted view of the questions at issue, stuck in the letter
of the law, and confined the jury to the single view presented
by the charge for the plaintiffs.    It was in effect a charge upon
the weight of evidence, declaring that John W. Schrimpf was
responsible as a master to his servants for their services, and
that he did not stand in the relation of a friend and father to
orphans, who owed him gratitude, instead of having pecuniary
claims on him.    Had that question been fairly and broadly left
to the jury, no such verdict as that rendered on this trial would
ever have been rendered.

*Henderson & Whitfield*, for the appellees.    The only legal
position taken by the appellants in the court below was that
John W. Schrimpf stood in his relation to the plaintiffs as *loco
parentis*, and that if that relation existed the plaintiffs could
not recover.

The court refused all the charges asked by the defendant on
that ground, and the defendant assigned it as one of the grounds
for a new trial, and doubtless rely upon it as error in this court.

The court very correctly charged the jury that in 1853, the
time J. W. Schrimpf took possession of the plaintiffs and put
them to work, no such relation as *loco parentis* existed in this
State, and the defendant could not evade his responsibility by
claiming that relation.    That the court was correct we cite Pas-
chal, title Guardian, Article 3927.

This act contemplated that the chief justice alone should
bind out all paupers and such minor ·children as had no prop-
erty—and allowed the guardian to bind out such minors as
had not sufficient property for their support.

But in this case the defendant's intestate, J. W. Schrimpf,

as the record shows, never stood in the relation of either guardian or master, but in his own wrong he took these children and put them to work, and administered on the estate of their father, and never accounted for one dollar of the same, either to the court or the plaintiffs, until they became of age, when they recovered it by the judgment of the District Court of Harris county.

The facts in the case fully sustained the verdict and will not be disturbed by this court, unless clearly against the evidence. This court will not disturb the verdict of the jury on the facts, if there be any testimony to sustain it. These points have been so often decided by this court that the cases need not be cited.

The court correctly charged the jury that the plaintiffs were entitled to recover for their services, any excess over and above their clothing, food, and schooling, such as they got; and to sustain that charge we refer the court to the following authorities : Moses v. Stevens, 2 Pickering, 332 ; Vent v. Osgood, 19 Pickering, 573 ; Nicholson v. Easton, 12 Pickering, 110 ; Bacon's Abridgment—title, Infancy.

The cases cited clearly show that a minor is entitled to recover wages for what they are reasonably worth ; although the minor had made a special agreement, and had, on his own part, abandoned it, he could recover upon an agreement what his services were reasonably worth. How much stronger the case at bar ! The plaintiffs left parentless, their property taken possession of, as well as their persons, and they put to hard work, without being bound out, and what little education they got was by attending a night school some five months, and day school only about one month ; and this the record will show applies to Jules mostly. The record shows the sole facts as to the character of education given them by the *loco parentis*, J. W. Schrimpf.

Ogden, J. In 1853 the parents of appellees died in Harris county, leaving them orphans, without relatives in this coun-

try, at the respective ages of about six and ten years.   J. W.
Schrimpf, who was a countryman and friend of appellees' de-
ceased father, took the boys into his own family, where they
remained until about the time of their majority.

After appellees arrived at their majority they each brought
suit against the administratrix of J. W. Schrimpf, he having
previously died, for the value of their labor and services ren-
dered during their minority.   The two cases having been con-
solidated by the consent of the parties were tried at the spring
term of the District Court, 1872, and a judgment was rendered
in favor of the plaintiff, Joseph Settegast, for the sum of two
thousand eight hundred and eighty-nine dollars and eighty-
two cents, and in favor of Julius Settegast for two thousand
four hundred and twenty dollars and eighty-nine cents, from
which judgment the administratrix has appealed to this court,
and seeks a reversal of the judgment, for errors in the charge
of the court, for errors of the court in refusing the charges
asked by the defendant, and for the error of the court in re-
fusing a new trial.

The charge of the court instructs the jury that under our laws
no person has any right or power to constitute himself the guar-
dian of an orphan minor child, nor to exercise any authority or
control over the person, or time, or service, of such minor ; and
the charge closes by instructing the jury that " in every case
" when any person so assumes to take charge of, and puts
" such minor to work for him, then such minor, upon arriv-
" ing at age, has a right to recover from such person the rea-
" sonable value of the services rendered for the time he was so
" in the service of such person."   As a general rule the charge
may be a correct proposition of law, and yet in justice, equity,
and humanity, there must be many exceptions to so rigid a rule;
and we think the court should have referred the jury to the
facts of this case for their determination whether this should
not be considered as constituting one of the many exceptions.

It may be admitted as a general rule of law, that whenever
services have been rendered to another, a contract for hiring

and an obligation to pay will be presumed. (2 Parsons on Contracts, 46.) But such a presumption is said not to arise in the case of parent and child, or of relations of blood (2 Kent's Com., 192 ; Lantz v. Frey, 14 Penn., 201; Defrance v. Austin, 9 Penn., 309), and this presumption may be rebutted in other cases, by proof of facts or circumstances which would show that neither party intended a contract for services and pecuniary compensation (2 Parsons on Contracts, 47 ; Hartman's Appeal, 3 Grant's Cases, 271 ; and Williams v. Hutchinson, 5 Barb., 122) ; as where a person, influenced by motives of great friendship, lives in the family of another and renders service, or when such services have been rendered because of the expectancy of a legacy, or when a person receives another into his family through motives of charity or humanity.

We have not been referred by either counsel in their brief, to any adjudicated case directly deciding the question presented in the charge of the court, but we find in many cases the reasons for a correct rule which should define and regulate the rights and duties of parties, in the relation presupposed by that portion of the charge of the court herein referred to. Chancellor Kent, in discussing the relative duties of parent and child, lays down the general rule that the father is bound to support and educate his minor children, and has a right to their services without compensation. " But," he says, " a husband is not " liable for the expense of maintenance of the child of his wife " by a former husband. If, however, he takes the wife's child "into his own house, he is then considered as standing *in loco* " *parentis,* and is responsible for the maintenance and education " of the child, so long as it lives with him." We can see no legal difference in the rights and duties of a person towards a step-son, and the same of a stranger; indeed, they are both strangers, and there is no legal obligation for support, and no corresponding duty of obedience and service in either case. But we are of the opinion that the weight of authority has established a doctrine that would hold a person who had, through motives of kindness or charity, received an orphan child into

his family, whether it be a step-child or an entire stranger, and treated it as a member of his family, as standing *in loco parentis*, so long as such child should see fit to remain in such family, or so long as it should be permitted thus to remain; and while that relation should exist, the party who stood *in loco parentis* would be bound for the maintenance, care, and education of such child, and would be entitled to his reasonable services, without being liable to pay for the same, only in the way of support, unless there had been an express promise to that effect. (14 Penn., 201 ; 9 Penn., 309 ; 3 Grant, 271 ; Andrews *v.* Foster, 17 Vt., 556 ; Amey's Appeal, 14 Penn., 127 ; 5 Barb., 125.) The last cited case was an action by a step-child against the husband of his mother, and Johnson J., delivering the opinion of the court, after reviewing the whole law, bearing not only upon the particular case before the court, but the law regulating the services of minors generally, says : " the books are full of " cases to show that under such circumstances the law will not " imply a promise to pay for services thus rendered, or permit " a recovery, unless an express promise is shown, or something " to prove that such was the expectation on both sides." In that case Wells J. delivered a very able dissenting opinion, in which he claimed nothing on account of the relation of step-father and step-son, but upon the general principle that the plaintiff had performed services, and that the law would presume a promise to pay ; that as the child was a minor he could make no binding contract, and therefore, as an express promise was impossible, the law for protection of infants will presume or assume one. And the learned judge claims that the plaintiff was entitled to receive the full value of the services rendered, after deducting the actual expenses of his living and education. He, however, seems to have lost sight of the fact, that when a child is reared with care and kindness, and taught principles of truth, honor, and industry, and educated to a degree that would make him a skilled, successful, and useful member of society, the repayment of the actual pecuniary expense bestowed on him would be but a poor compensation indeed, for

the care, trouble, and anxiety necessarily bestowed. This cause, and particularly the dissenting opinion of Justice Wells, was most thoroughly reviewed by Justice Pratt in the same case, on an appeal from the Supreme Court to the Court of Appeals (3 Comstock, 317), in which the dissenting opinion of Justice Wells is criticised to a considerable length, and directly over-ruled, and declared not to be the law. In that case the plaint-iff, at the age of eleven years, was adopted into the family of the defendant, and was educated and treated as one of the family, and the court of appeals held, that after his majority he had no right to claim compensation for services. That case is in many respects parallel with the one at bar, and we are of the opinion that the same law should govern both cases.

Counsel for appellees appear to put great stress upon the fact that appellees were sometimes not well clothed; that they received but a limited education; and that therefore they were entitled to a large sum as compensation for their services. The proof, however, establishes the fact that when they were received into the family of J. W. Schrimpf, they were both sickly and almost helpless; that they were cared for and well fed; that they soon became useful and industrious boys; that they received a moderate education, which, together with their regular habits, qualified them to become good business men; and further, that they were both taught a good trade, by which they in a few short years have thoroughly established themselves in a permanent and lucrative business. We are decidedly of the opinion that for all these advantages and benefits they are indebted to some one, and if to J. W. Schrimpf, or his family, then the jury should have been at least instructed to place an estimate on these benefits, if they could, as an offset against the claim for services.

Justice Parker in the case referred to says: "I should feel "much more inclined to hold a man standing *in loco parentis* "responsible, who has furnished his adopted child with needful "clothing and education, and had neglected to train him up in "habits of industry." We think this language may be applied

to the case at bar, as a rule by which to measure, at least to some extent, the responsibility of the appellant. We think the court erred in instructing the jury in effect that J. W. Schrimpf, when he found the appellees orphans, sick and without friends, at the tender ages of six and ten years, could not extend to them the hand of charity or humanity, until he had an order of the probate judge, binding them out to him, without making himself responsible for their services. The learned judge may not have intended to carry his instructions to that extent, but, after a careful reading of the whole charge, we think that such a conclusion is but a legal deduction.

We do not wish to be understood as deciding that in no event are the appellees entitled to recover any sum whatever, but that must depend upon the fact whether J. W. Schrimpf during his lifetime treated appellees with that care and kindness which was due to them as adopted children, and gave them such an education and advantages as his position in life and pecuniary situation would permit; and these facts are to be found by a jury. But we do decide that under the testimony in this case the verdict in our opinion is excessive and unconscionable; and we send it back to be again submitted to a jury under proper instructions from the court, that justice and equity may be attained. The judgment is therefore reversed, and the cause is remanded.

Reversed and remanded.